UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

        Case No. 17-cr-175-pp

TORRENCE HARRIS, SR.,

        Defendant.

**ORDER ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 482) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 462)**

On December 2, 2020, Magistrate Judge William E. Duffin issued a report recommending that this court deny the defendant's motion to suppress the fruits of a video surveillance search. Dkt. No. 482. The defendant has not objected to Judge Duffin's report.

Defendant Torrence Harris, Sr. filed a motion to suppress "all fruits derived from the two warrantless video surveillance cameras installed inside and outside of 2200 N. M.L.K., Jr. Dr., Milwaukee, Wisconsin" on October 1, 2020. Dkt. No. 426. In support of the motion, the defendant cited Carpenter v. United States, __ U.S. __, 138 S. Ct. 2206 (2018), and United States v. Jones, 565 U.S. 400 (2012). Id. The defendant is one of seventeen defendants charged in this drug case; only two other defendants are in a trial posture. Prior to entering his guilty plea, co-defendant Fontae Kelly filed a motion to suppress the same evidence. Dkt. No. 195. The court denied that motion. Dkt. No. 239. For the same reasons the court denied Kelly's motion, the court will adopt Judge Duffin's recommendation to deny the defendant's motion to suppress.

1

## I. Background

In its decision denying Kelly's motion to suppress, the court quoted former Magistrate Judge David E. Jones's recitation of the facts:

> [B]ased on an investigation into drug distribution activities involving defendant and others, law enforcement installed a video surveillance camera in the hallway on floor level B of 2220 N. Martin Luther King Drive, Milwaukee, in September 2017. Motion to Suppress Fruits of Apartment Video Surveillance Searches 1. The video camera pointed at the exterior door to apartment unit B41 ("the apartment"). *Id.* at 2. Law enforcement also installed a "pole camera" on a utility pole in proximity to that same apartment complex. Response To Motion To Suppress Fruits of Apartment Video Surveillance Searches 1. On September 27, 2017, law enforcement executed a search warrant for unit B41 and found approximately 10 ounces of heroin, 33 grams of Fentanyl, a kilo press, a grinder, and a firearm. *Id.* at 2.

Id. at 2.

In the instant case, defense counsel submitted an affidavit stating the following:

> 4. On October 17, 2017 [the defendant] was charged for his alleged involvement in a heroin distribution conspiracy based in Milwaukee, Wisconsin. The government alleges that as part of this conspiracy, heroin was stored and distributed from a "stash house" operating out of apartment B41 of the Historic King Place Apartments, located at 2200 N. Martin Luther King Jr. Dr., Milwaukee, Wisconsin.
>
> 5. On an unknown date in August 2017 law enforcement, without a warrant, installed a pole camera which surveilled the exterior, east side of the King Place Apartments. (Camera 1). The footage captured by Camera 1 allowed real-time, live-viewing of its footage as well as playback options.
>
> 6. In September 2017 law enforcement again installed, without a warrant, an additional surveillance camera on floor B of the Historic King Place Apartments with the same capabilities. (Camera 2). Camera 2 was pointed at the entrance to Apartment B41 and captured video footage of anyone entering or exiting the unit from September 18, 2017-September 27, 2017 and had the same capabilities as Camera 1.

7. Upon information and belief, both Camera 1 and Camera 2 captured footage of [the defendant] and revealed that [the defendant] had frequent access to apartment B41.

8. On September 27, 2017 law enforcement executed a search warrant for apartment B41 based, in part, upon information obtained related to [the defendant's] movements captured through Camera 1 and Camera 2.

9. Upon information and belief, the footage of [the defendant] captured through Camera 1 and Camera 2 was obtained in violation of his Fourth Amendment rights and all footage and fruits derived from this footage should be suppressed.

Dkt. No. 462-1 at 1-2.

## II. Judge Duffin's Recommendation (Dkt. No. 482)

Judge Duffin's recommendation described the defendant's motion as "the same motion" as the one filed by Kelly and denied by this court. Dkt. No. 482 at 1. Judge Duffin found that "[the defendant] does not offer new facts or argue that the law has changed since Chief Judge Pepper denied his codefendant's motion. In fact, he does not even acknowledge the prior motion or decision, as he is required to do." Id. Judge Duffin decided that the court's reasoning in Kelly applied to the defendant's motion and recommended that the court deny that motion. Id. at 1-2.

## III. Analysis

Under Fed. R. Civ. P. 72(b), if a party does not object to a magistrate judge's report and recommendation, the district court reviews the magistrate judge's recommendation for clear error. Fed. R. Civ. P. 72(b); Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999) (citations omitted). "If no party objects to the magistrate judge's action, the district court judge may simply accept it." Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 760 (7th Cir. 2009). "[A]lthough a district judge *must* make an independent determination of magistrate judge's order upon objection, he is not *precluded* from reviewing a

3

magistrate judge's order to which a party did not object." Id. (citing Allen v. Sybase, Inc., 468 F.3d 642, 658 (10th Cir. 2006); Phillips v. Raymond Corp., 213 F.R.D. 521, 525 (N.D. Ill. 2003)). This court must decide only whether Judge Duffin's report and recommendation are clearly erroneous. They are not.

Fontae Kelly sought to suppress the government's use of footage from the same video surveillance cameras "inside and outside of the 2200 N. Martin Luther King Jr. Blvd. apartment complex." Dkt. No. 195 at 1. Kelly relied on the Supreme Court's decisions in United States v. Jones, 565 U.S. 400 (2012) and Carpenter in asserting that "the sum of his movements while entering and leaving the 2200 N. Martin Luther King Jr. Blvd. apartment, including unit B1," were private. Dkt. No. 195 at 2. He asserted that because no one from outside the apartment could have observed his activities inside the apartment, Kelly asserted that he had a reasonable expectation of privacy "in the sum of his movements." Id. at 2-3. He asserted that he was an overnight guest in the apartment, which strengthened that expectation, and that he had a reasonable expectation outside of the apartment complex "because he did not reveal 'the whole of his physical movements' to the public." Id. (citing Carpenter, 585 U.S. at *15.

Similarly, the defendant argues that "the collective surveillance footage from both Camera 1 and Camera 2, alone and together, infringed upon [the defendant's] reasonable expectation of privacy in his historical record of activities viewable by the cameras recording the curtilage of the apartment building and the entrance to apartment 4B1." Dkt. No 462-2 at 3. He asserted to Judge Duffin that he had a "reasonable expectation to preserve as private the sum of his movements while entering and leaving the King Place Apartments, including unit B41." Id. at 3-4. The defendant argued that "[n]o

4

one from outside the apartment could have observed the sum of his activities while inside, save the agents who secretly and illegally watched the recordings of [the defendant]." Id. at 4. He also asserted, in almost identical language to Kelly, that he also had "a reasonable expectation of privacy while outside the apartment complex because his presence outside the home did not reveal the 'whole of his physical movements' to the public." Id. (citing Carpenter, 585 U.S. at *15).

This court already has rejected these arguments in denying Kelly's motion to suppress. In Kelly, this court explained that

> [t]he motion to suppress argued that the defendant had a "reasonable expectation of privacy . . . [in] the aggregate of his movements while inside and outside of the 2200 N. Martin Luther King Jr. Blvd. complex." Dkt. No. 195 at 1. He argued that Carpenter demonstrated that "the Supreme Court is ready to hold that long-term surveillance of an individual's home constitutes a search" because that decision found that "'[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere.'" Id. at 3 (quoting Carpenter, 138 S. Ct. at 2217).
>
> The Carpenter Court held that the government's acquisition of [cell site location information] violated the Fourth Amendment. Carpenter, 138 S. Ct. at 2217. The Court recognized that "[a]s technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, [the Supreme] Court has sought to 'assure [] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" Carpenter, 138 S. Ct. at 2214 (quoting Kyllo v. United States, 533 U.S. 27, 34 . . . (2001)). It reasoned that mapping a cell phone's location over the course of 127 days provided an "intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" Id. (quoting Jones, 565 U.S. at 415 . . .). The Court explained that its decision was a "narrow one" that did not call into question "conventional surveillance techniques and tools, such as security cameras." Id., 138 S. Ct. at 2220.
>
> The defendant reads Carpenter too broadly. Not only did the text of the decision explicitly limit itself to CSLI, but its rationale relied on the fact that by its nature, a cell phone

5

> tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales.
>
> Carpenter, 138 S. Ct. at 2217.
>
> In contrast, stationary video surveillance of the exterior of the apartment building on Marin Luther King Blvd., and the hallway outside of the apartment, could capture only limited information: how many people came to the apartment complex and when; how many left, and when; how many people entered the apartment and when; how many people left it and when. In some instances, it captured the identities of the people who entered and left he apartment. Unlike a cell phone, the video surveillance did not track the totality of the defendant's movements. It tracked only his arrival to and departure from a residence that wasn't his. The defendant's attempt to equate a process that records only what someone standing in the apartment hallway, or outside the apartment complex, could have seen with a process [that] follows a person into homes, places of worship, hotels, bedrooms, restaurants and meetings, takes Carpenter's reasoning too far.

Dkt. No. 239 at 8-10.

The court's decision in Kelly went on to give a further explanation, but the point is that Judge Duffin concluded that the same reasoning applies to the defendant's argument. This court agrees. While Judge Duffin's reliance on this court's own decision means that, in a sense, the court reviews its own reasoning for clear error, the court cannot find that Judge Duffin's application of that reasoning to identical facts constituted clear error. The defendant had no more expectation of privacy in the exterior and the interior common areas of the Martin Luther King, Jr. Blvd. apartment building than did Fontae Kelly, and Judge Duffin's recommendation to that effect does not constitute clear error.

6

## IV. Conclusion

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 482.

The court **DENIES** the defendant's motion to suppress. Dkt. No. 462.

The court **ORDERS** that this case as to Torrence Harris, Sr. is **REASSIGNED** to Appellate Judge Michael Y. Scudder for all further proceedings.

Dated in Milwaukee, Wisconsin this 27th day of January, 2021.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**